IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **C.M.** | * | |
|   *Plaintiff*, | * | |
| v. | * | Civil Case No: 1:25-cv-2684-JMC |
| **ADAMS & ASSOCIATES, INC.** | * | |
|   *Defendant.* | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION AND ORDER

Plaintiff C.M. brought the present lawsuit in state court on May 31, 2025, against Adams & Associates, Inc.[1] alleging Negligence (Count I); Negligent Hiring, Training, Supervision, and Retention (Count II); and Gross Negligence (Count III). (ECF No. 4). Defendant removed the case to the United States District Court for the District of Maryland on August 14, 2025. (ECF No. 1). Presently before the Court is Defendant's Motion to Dismiss. (ECF No. 22). The motion is fully briefed (ECF Nos. 22, 27, 28) and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons set forth below, Defendant's Motion to Dismiss is DENIED.

**I. BACKGROUND**

The instant case arises from Plaintiff's alleged sexual abuse while he was a child residing at Woodstock, a center for disadvantages children operated by Adams and Associates, in 2003. (ECF No. 4 at 2).[2] In 2003, Plaintiff was "approximately 16-17 years old" while residing at Woodstock. *Id.* Plaintiff asserts that one employee by the name of "Mr. Porter" "sexually abused [Plaintiff] as defined in Md. Code Ann., Cts. & Jud. Proc. § 5-117(a), including but not limited to:

---

[1] Plaintiff pleads "joint and several liability pursuant to Md. Code Ann., Cts. & Jud. Proc § 3-1403 such that Defendant and any future parties joined to this action are liable for the full amount of any judgment or verdict entered herein."
[2] When the Court cites to a specific page number or range of page numbers, the Court is referring to the page numbers provided in the electronic filing stamps located at the top of every electronically filed document.

penetration, oral sex, masturbation, and fondling genitals skin to skin." *Id.* at 4. Moreover, Plaintiff alleges the "above-described sexual contact and/or acts perpetrated by Defendant's employee or agent was non-consensual." *Id.* "Plaintiff was a minor [who] could not legally consent." *Id.*

Plaintiff asserts the "abuser-staff member was not being adequately supervised, monitored, or surveilled by Defendant." *Id.* "Plaintiff's abuser had a propensity for the conduct which caused injury to Plaintiff, particularly a propensity to engage in the sexual abuse of children" in Defendant's facility. *Id.* at 5. Plaintiff asserts Defendant knew or should have known that "Plaintiff's abuser was unfit, dangerous, and a threat to the health, safety, and welfare of the minors entrusted to their care." *Id.* Specifically, there were "complaints and allegations both from youth residents and independent evaluators which informed [Defendant] that numerous staff had, and were continuing to, perpetuate sexual abuse upon the youth in their care." *Id.* at 12. "Defendant failed to ensure that investigations into allegations of sexual abuse were thoroughly and timely conducted, and thus, they often resulted in biased and unreliable refusals to substantial residents' complaints." *Id.* at 7. "Defendant failed to ensure that its investigations gave adequate weight to similar prior complaints of sexual misconduct against the same staff member." *Id.*

Defendant removed the instant case to federal court on August 14, 2025. (ECF No. 1). Thereafter, Defendant filed the Motion to Dismiss on October 9, 2025. (ECF No. 22).

## II.     LEGAL STANDARD

The purpose of Federal Rule of Civil Procedure 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)) (internal quotations omitted). To survive a Rule 12(b)(6) motion to dismiss, "detailed factual allegations are not required, but a plaintiff must provide the grounds of his entitlement to relief," which requires

2

"more than labels and conclusions, or a formulaic recitation of the elements of a cause of action." *Petry v. Wells Fargo Bank, N.A.*, 597 F. Supp. 2d 558, 561–62 (D. Md. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007)) (internal quotations omitted). In considering a motion to dismiss, "the Court must accept the complaint's allegations as true, and must liberally construe the complaint as a whole." *Humphrey v. Nat'l Flood Ins. Program*, 885 F. Supp. 133, 136 (D. Md. 1995) (internal citations omitted). The Court must also construe the facts and reasonable inferences from the facts in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997); *see also Petry*, 597 F. Supp. 2d at 562 ("Once a claim has been stated adequately . . . it may be supported by showing any set of facts consistent with the allegations in the complaint.") (quoting *Twombly*, 550 U.S. at 546).

### III.  ANALYSIS

Defendant moves to dismiss the Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) based on the argument that (1) Plaintiff's claims are subject to the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* (the "FTCA"), under which Plaintiff has failed to bring a claim and (2) even if the Federal Tort Claims Act does not apply, Plaintiff has failed to plead claims under the Maryland common law.  *See generally* (ECF No. 22-1). Plaintiff opposes the motion, and argues the Federal Tort Claims Act does not apply and Plaintiff adequately pled Maryland common law claims.[3]  *See generally* (ECF No. 27).

---

[3] Plaintiff raises an additional issue of timeliness. (ECF No. 27 at 3-5). Defendant's Reply raises additional timeliness concerns on Plaintiff's behalf. (ECF No. 28 at 2-3). The Court allowed Plaintiff leeway to file an untimely response for consideration.  (ECF No. 23).  Therefore, the Court declines to rule for either party on this basis.

> **A.     The Court Declines to Find Plaintiff was Required to Bring Claims under the FTCA.**

Defendant urges this Court to dismiss the Complaint because Plaintiff brought claims of negligence rather than a suit under the Federal Tort Claims Act. (ECF No. 22 at 6). Though unclear from the Complaint, Defendant's motion to dismiss memoranda elaborated upon the relationship between Defendant, the minors who resided at Defendant's Woodstock facility, and the federal government. *See* (ECF No. 22-1). "Defendant Adams is a corporation that …operated the Woodstock Job Corps Contract Center located in Woodstock, Maryland." (ECF No. 22-1 at 4). "Job Corps is a United Stated Department of Labor program providing free education and vocational training to individuals ages 16-24." *Id.* "The U.S. Secretary of Labor selects eligible entities, such as Defendant Adams to operate contract centers on a competitive basis in accordance with applicable statutes and regulations." *Id.* Defendant was one such entity that also operated a residential facility as part of its operations for Job Corps. *Id.* at 4-5. Accordingly, Defendant "provided residential, career technical, career development, and academic services for the Woodstock Job Corps Contract Center." *Id.* Defendant emphasizes the "ultimate control over the contracted activity, the operation of the Woodstock Job Corps Contract Center, remains with the Federal Government and is governed and regulated by the Federal Code." *Id.* at 10-11. Therefore, Defendants aver Plaintiffs must state a claim under the FTCA because it "provides an exclusive remedy for all tort suits against the government and its employees who commit tortious acts in the course of their employment." *Ross v. Federal Bureau of Alcohol, Tobacco, and Firearms*, 807 F.Supp.2d 362, 369 (D. Md. 2011).

Defendants rely upon several cases in support of the proposition that "Plaintiff's tort claims, which have been brought under State common law (negligence), are improper." (ECF No. 22-1 at 12); *e.g.*, *Ross*, 807 F.Supp.2d at 369-370 (dismissing a case brought against several federal

agencies because "under the FTCA, neither the FBI nor the ATFE, as federal agencies, can be sued for torts"). In response, Plaintiff argues the "cases to which Defendant cites name the United States as the defendant and seek to hold the federal government liable for the acts or omissions of a government contractor." (ECF No. 27 at 8). "Many of these cases conclude that the United States was not liable, given the contractor's status as an "independent contractor" rather than a federal employee, and that those contractors should have been sued in their own capacities instead. Indeed, the FTCA expressly excludes independent contractors from its scope.[4]" *Id.* At this juncture, the Court finds Plaintiff's argument persuasive.

The Court declines to dismiss the Complaint on the basis that the claims must have been brought under the FTCA. The Supreme Court established a control test for "the distinction between an employee and an independent contractor where the relationship is fixed by contract, holding that the distinction 'turn[s] on the absence of authority in the principal to control the physical conduct of the contractor in performance of the contract.'" *Harris-Reese*, 615 F.Supp.3d 336, 361 (D. Md. 2022) (quoting *Logue v. United States*, 412 U.S. 521, 528 (1973)). To be sure, "[t]he fact that the contractor is required to adhere to certain federal government rules and regulations does not necessarily establish that the government is exercising such control." *Id.* (quoting 28 U.S.C. § 1346(b)). Rather, "[o]nly where the government has the power under the contract to supervise a contractor's day-to-day operations and control the detailed physical performance of the contractor can it be said that the contractor is an employee or agent of the United States within the [FTCA]." *Wood v. Standard Prods. Co.*, 671 F.2d 825, 829 (4th Cir. 1982). For example, in *Logue v. United States*, the Supreme Court ruled that a county jail, which had a contract to house federal detainees, was a mere contractor because the federal government

---

[4] *See* 28 U.S.C. § 2671(defining a federal agency such that the FTCA does not apply to "any contractor with the United States).

5

did not have authority to physically supervise the conduct of the jail's employees. *Logue*, 412 U.S. at 529-30. Defendant cites to many of the federal regulations that govern Job Corps contractor facilities in support of the contention that these regulations create the requisite control under cases like *Logue* to conclude Defendant was an employee and not a federal contractor.[5] (ECF Nos. 22-1, 28).

It is true that facility operators like Defendant must comply with many federal regulations. However, based on the information available to the Court at this juncture, none of these regulations show the kind of physical supervision of Defendant's employees required to find that Defendant was a federal employee or agency within the meaning of the FTCA such that Plaintiff would be barred from bringing negligence claims against it. *See Logue*, 412 U.S. at 529-30. Moreover, both parties recognize that Defendant operated its facility by way of a government contract. From what the Court can discern, there exists no contention that the federal government exhibited physical, day-to-day oversight at Defendant's facility or of the Defendant's employees. Thus, as a matter of pleading, the Court is not prepared to dismiss the Complaint on the basis that Plaintiff has not brought a claim under the FTCA. Therefore, the Motion to Dismiss is DENIED on the basis that Plaintiff was required to bring claims under the FTCA.

---

[5] Defendant cites to 20 C.F.R. 20 § 686.900 in support of the proposition that "the students, like Plaintiff, residing at the Job Corp. facilities have already been determined by Congress to be Federal Employees for the purposes of the FTCA." (ECF No. 28 at 5). This is true. 20 C.F.R. § 686.900 provides students, like Plaintiff, "are considered Federal employees for the purposes of the FTCA." However, this argument does not persuade the Court to extend such a finding to Defendant. To the contrary, the failure of Congress to include any such provision with respect to the facility operators supports a conclusion that the omission was intentional. *See Reyes-Gaona v. North Carolina Growers Ass'n*, 250 F.3d 861, 865 (4th Cir. 2001) ("And the doctrine of *expressio unis est exclusio alterius* instructs that where a law expressly describes a particular situation to which it shall apply, what was omitted or excluded was intended to be omitted or excluded."). The Court therefore declines to expand 20 C.F.R. § 686.900's express meaning.

### B.  Plaintiffs Pleads Cognizable Negligence and Negligent Hiring, Retention, Supervision, or Training Claims at this Early Stage.

The Complaint presents a close question. To plead a cognizable negligence claim, Plaintiff must allege "the existence of a duty owed by a defendant to him (or to a class of which he is a part), a breach of that duty, a legally cognizable causal relationship between the breach of duty and the harm suffered, and damages." *Perry v. Asphalt & Concrete Servs., Inc.*, 447 Md. 31, 51 (2016).  Here, Plaintiff alleges that Defendant owed a duty to him as he was in Defendant's physical custody and care.  As for the alleged breaches of that duty, Plaintiff alleges:

> The Defendant failed to use ordinary care in determining whether its facilities were safe. The Defendant's breach of its duties include, but are not limited to: (i) failing to protect Plaintiff from sexual abuse, sexual assault and lewd and lascivious acts; (ii) failing to adequately, properly and completely investigate whether Plaintiff was safe and free from maltreatment; (iii) failing to adequately, properly and completely investigate the acts and conduct of Plaintiff's abuser; (iv) failing to remove Plaintiff from the facility where he was placed when it knew or should have known that Plaintiff was at risk there of foreseeable harm from sexual abuse; (v) failing to implement and enforce policies and procedures that were adequate to protect the health, safety and welfare of foster children and protect them from sexual and physical abuse; (vi) failing to adequately monitor and supervise Plaintiff; (viii) failing to adequately hire and train employees, agents, counselors, and social workers; (ix) failing to report the ongoing sexual abuse being committed by Plaintiff's abuser, despite Defendant's constructive and/or actual notice of same; (x) concealing its knowledge that Plaintiff's abuser was unsafe and posed a risk of child sexual abuse; and (xi) failing to report the sexual abuse of Plaintiff to law enforcement.
>
> (ECF No. 4 at 6-7).

Defendant argues "the allegations of Plaintiff's Complaint set forth conclusory statements.[6]" (ECF No. 22-1 at 15).  Defendant continues, "Plaintiff does not identify any facts that demonstrate the

---

[6] Specifically, Defendant argues

> Plaintiff concludes, without any factual support, the following: (1) Defendant knew or should have known that Mr. Porter at Woodstock was sexually abusing children and/or posed a risk to sexual abuse children; (2) the abuser-staff member was not being adequately supervised, monitored, or surveilled by Defendant; (3) Plaintiff was not being adequately supervised, monitored, or surveilled by Defendant; (4) Defendant knew or in the exercise of reasonable care should have known that the facility in which Plaintiff was placed was not safe and that it was foreseeable Plaintiff would be sexually abused; (5) Plaintiff's abuser had propensity for the conduct which caused injury to

7

abuser's alleged propensity or history of engaging in sexual abuse. There are no facts plead as to any prior abuse. Plaintiff also fails to set forth any facts to demonstrate that Defendant had actual or constructive knowledge of the specific abuse Plaintiff alleges to have been subject to, or any prior abuse of others." (ECF No. 22-1 at 16). In response, Plaintiff insists "The purpose of a complaint is not establishing, i.e., proving, the elements of a claim…The allegations in the Complaint surpass the minimum pleading requirement of enough facts to state a claim to relief that is plausible on its face." (ECF No. 27 at 18) (cleaned up).

At this stage, Plaintiff must plead facts sufficient to support plausible inferences showing (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached that duty; and (3) the defendant's breach actually and proximately caused the plaintiff's injury. *Pendleton v. State*, 398 Md. 447, 460 (2007); *Remsburg v. Montgomery*, 376 Md. 568, 582 (2003). As for the existence of a duty, where, as here, there exists a special relationship giving rise to a duty of care such as the duty owed by an institution to a student, an entity must "exercise reasonable care to protect a pupil from harm." *Lunsford v. Bd. of Ed. of Prince George's Cnty.*, 280 Md. 665, 676 (1977) (considering the standard of care for a school).

As for a breach of that duty, the actions that Plaintiff alleges would certainly be sufficient to survive a motion to dismiss filed by Mr. Porter. But whether those allegations are sufficient as against Defendant as his alleged employer often turns on the issue of foreseeability. *See Gambrill*, 481 Md. at 315 (recognizing that in the school context, "the plaintiffs' claim will rise or fall on the issue of foreseeability.").

---

Plaintiff, particularly a propensity to engage in the sexual abuse of children/residents in Defendant's facility; (6) Defendant knew or should have known Plaintiff's abuser was unfit, dangerous, and a threat to the health, safety, and welfare of minors; and (7) Defendant provided Plaintiff's abuser with unsupervised and unfettered access to Plaintiff and gave him the opportunity to commits foreseeable acts of child sexual abuse.

Relatedly, a negligent hiring, retention, supervision, or training claim requires allegations sufficient to support an inference of, inter alia, the employer's actual or constructive knowledge of employee incompetence. *See Minnick v. Southwest Airline Co.*, Civil Case No. 1:22-cv-2084-JMC, 2024 WL 4252988, at *2 (D. Md. Sep. 20, 2024) (internal quotations omitted); *see also Latty v. St. Jospeh's Soc. of Sacred Heart, Inc.*, 198 Md.App. 254, 272 (Md. Spec. App. 2011) *abrogated on other grounds by Plank v. Cherneski*, 469 Md. 548 (2020). Moreover, "[t]here is a rebuttable presumption that an employer has used due care in hiring the employee." *Horridge v. St. Mary's Cnty. Dep't of Soc. Servs.*, 382 Md. 170, 181 (2004). Specifically, a plaintiff must allege an employer "had or should have had knowledge of [the employee's] conduct or general character which would have caused a prudent employer in these circumstances to have taken action." *Bryant v. Better Bus. Bureau of Greater Maryland, Inc.*, 923 F. Supp. 720, 751 (D. Md. 1996). Thus, whether both the negligence and negligent hiring, retention, supervision, or training claims can survive the motion to dismiss stage turns on whether the Complaint supports an inference that Defendant knew about Mr. Porter's propensity to abuse.

In *J.D. v. Baltimore City Board of School Commissioners*, this Court denied a motion to dismiss the plaintiffs' negligence claim against a school board for the failure to prevent a student-on-student sexual abuse. *J.D. v. Baltimore City Bd. of Sch. Comm's.*, Case No. 1:25-cv-1125-JMC, 2025 WL 2653149 (D. Md. Sept. 16, 2025). With respect to the negligence claim,[7] this Court considered whether it was foreseeable to a defendant school that a student with previous behavioral issues would inflict a sexual assault upon another student. *Id.* at 8. In *J.D.*, the plaintiffs pled that

---

[7] The Court dismissed the negligent hiring, retention, supervision, or training claim because the facts did not support an inference that the teacher responsible for the students showed warning signs of incompetence. *J.D.*, 2025 WL 2653149, at *8-*9. Of course, those facts with regard to that claim are distinguishable as the Plaintiff here asserts that Mr. Porter was responsible for the sexual abuse at issue in both the negligence and negligent hiring, retention, supervision, or training claims. (ECF No. 4). Where the knowledge inquiry there changed under the negligent hiring, retention, supervision, or training claim, the same facts are at issue for both claims here. *J.D.*, 2025 WL 2653149, at *8-*9.

the perpetrator's great-grandmother told the defendant school that the student "had serious behavioral issues that could potentially pose a threat to other students." *Id.* This Court reasoned that although the complaint failed to plead the underlying facts with much precision, the negligence claim was sufficiently pled such that discovery would "shed light on exactly what was conveyed and whether the risk posed was sufficient to put a reasonable school on notice." *Id.*

Defendant's concern with the conclusory nature of many of Plaintiff's allegations is well taken. Critically, the *J.D.* complaint provided some factual basis upon which the Court could plausibly infer that the alleged sexual assault was foreseeable to the defendant because the perpetrator's great-grandmother warned the school he suffered from certain behavioral issues. *J.D.*, 2025 WL 2653149, at *8. Here, there exists one allegation first raised under Count III, which alleges there were "complaints and allegations both from youth residents and independent evaluators which informed [Defendant or its agents] that numerous staff had, and were continuing to perpetrate sexual abuse upon the youth in their care." (ECF No. 4 at 12). Plaintiff alludes to several other instances in which there were "prior complaints of sexual misconduct" against Mr. Porter. (ECF No. 7). Plaintiff continues, "Such patterns may include allegations that a staff member has used the same language in propositioning or threatening more than one resident or allegations that a staff member has taken more than one resident to the same location to engage in sexual abuse." *Id.* Though Plaintiff does not specify those complaints were about Mr. Porter with much clarity, a liberal construction of those allegations taken together entitles him to such an inference at this pre-discovery stage.

The Court recognizes the imprecise nature of these allegations and the conclusory nature of many of the allegations set forth in the Complaint. However, taken in the light most favorable to Plaintiff and together with the allegation that youth residents and independent evaluators

10

informed numerous staff of sexual abuse, the Complaint supports an inference that certain staff members, including Mr. Porter, perpetrated some kind of foreseeable sexual abuse based on the numerous specific complaints. *See J.D.*, 2025 WL 2653149, at *8. Though it is not much, Plaintiff has alleged more than a mere propensity to abuse; rather, Plaintiff alleged facts that support an inference that Defendant knew that such a propensity—whether from Mr. Porter or from Mr. Porter and others—pervaded the facility. *See J.D.*, 2025 WL 2653149, at *8. Moreover, the Court recognizes that at this early stage, Plaintiff does not have access to records from 2003 that may illustrate the exact reports that were made. Albeit a close question, the Court is not prepared to dismiss the negligence claim for a lack of precision similar to that in *J.D. See id.* By extension, the Court is not prepared to dismiss the negligent hiring, retention, supervision, or training claim based on the same inferences. *But see id.* (dismissing a negligent hiring, retention, supervision, or training claim because there were no warning signs that a defendant teacher was incompetent to prevent a student-on-student assault). Like in *J.D.*, discovery is necessary to shed light on what exactly the resident and third-party complaints were and whether they were sufficient to confer the requisite notice upon Defendant so as to substantiate a negligence claim. *Id.* Therefore, the Motion to Dismiss with respect to Counts I and II is DENIED.

    **C.**    **Plaintiff Pleads a Cognizable Gross Negligence Claim Sufficient to Survive the Motion to Dismiss Stage.**

The gross negligence claim warrants additional discussion. "Courts have utilized slightly different language to describe gross negligence, but all agree that it is a demanding standard." *Doe v. Bd. of Educ. of Washington Cnty.*, No. JFM-15-00074, 2015 WL 4716065, at *4 (D. Md. Aug. 6, 2015); *see also Doe v. Bd. of Educ. of Prince George's Cnty.*, 982 F.Supp.2d 641, 658–59 (D. Md. 2013) ("Gross negligence connotes wanton and reckless disregard for others.") (internal quotation marks omitted); *Barbre v. Pope*, 402 Md. 157, 187 (2007) (recognizing gross negligence

11

as "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them."). Indeed, "[g]ross negligence must be pled with specificity." *Khawaja v. Mayor & City Council, City of Rockville*, 89 Md. App. 314, 318 (1991). Of course, "[c]onclusory allegations of gross negligence are . . . insufficient for a plaintiff to prevail at the Rule 12(b)(6) stage." *Palmer v. Kirkland*, No. GLR-16- 2636, 2017 WL 11615522, at *4 (D. Md. June 23, 2017).

When the allegations support an inference that the defendant made some effort to act, even unsatisfactory or negligent efforts are insufficient to state a claim of gross negligence. *Compare Doe*, 2015 WL 4716065, at *4 (dismissing gross negligence claims against an assistant principal when he took some steps to remedy a plaintiff's harassment but subsequently failed to prevent the plaintiff's assault inflicted by the plaintiff's harasser) *and J.D.*, 2025 WL 2653149 at *9 (dismissing a gross negligence claim against a defendant school for failure to prevent a student's exposure to the perpetrator of a her alleged assault when the school undertook an investigation endeavored to keep the students separated) *with Singleton v. Wade*, Civil Action No. 3:21cv553, 2022 WL 4349826 (D. Va. Sept. 19, 2022) (denying a motion to dismiss a gross negligence claim against certain prison officials for failure to prevent an inmate-on-inmate attack because the complaint alleged those officials knew about prior assaults in the months, weeks, and days prior to their attack on the plaintiff). Accordingly, when institutions have knowledge of a threat and fail to undertake any effort to prevent foreseeable harm, such claims may survive a motion to dismiss. *Singleton*, 2022 WL 4349826, at *10.

In *Singleton v. Wade*, the court denied a motion to dismiss a gross negligence claim against five prison officials who occupied various roles in the prison's security and operation. *Id.* The

plaintiff brought suit after suffering an inmate-on-inmate attack while under the defendants' supervision and custody. *Id.* at *9. In pertinent part, the complaint alleged that certain on-duty officials failed to conduct timely cell checks. *Id.* at *10. Recognizing that "[i]n a vacuum, the defendants' failure to perform required checks may not have amounted to an utter disregard of prudence," the court reasoned that the complaint supported an inference that each on-duty defendant was subjectively aware of the danger that failing to conduct prison checks could pose and further knew perpetrator inmates "assaulted other prisoners…in the months, weeks, and days prior to their attack" on plaintiff. *Id.* Against the prison officials who were not on duty when the attack transpired, the court noted that those claims "turn[ed] on the defendants' knowledge of the circumstances posing an obvious risk of serious harm to the inmates in the jail." *Id.* at *11. The court reasoned that those officials knew of a pattern of inmate assaults and a "systemic lack of supervisor in the Jail." Therefore, the court concluded that "deliberately turning a blind eye to that reality…subjected inmates including [the plaintiff] to an unnecessary risk of serious or fatal injury." *Id.*

This case differs from *Singleton* by the level of detail in the allegations. However, like the complaint there, the Complaint here does set forth some basis upon which the court can infer that Defendant knew Mr. Porter posed a risk based on the alleged prior reports of abuse by resident children and failed to take any action. *See id.* at *9-*11. Neither the Complaint nor the Defendant's motion to dismiss memoranda offer any assertion that Defendant took steps to prevent abuse after independent reports of it. *See* (ECF Nos. 4, 22, 28). Discovery may well prove otherwise. But taking the allegations as true, Defendant ignored numerous complaints of sexual abuse and took no steps to prevent future abuses or break the pattern. *See generally* (ECF No. 4). Therefore, based on the analysis above and construing the Complaint liberally, the Court cannot dismiss the gross

13

negligence claim. *Singleton*, 2022 WL 4349826, at *10-*11.  Therefore, the Defendant's motion to dismiss with respect to Count III is DENIED.

## IV.    CONCLUSION

For the reasons stated herein, Defendants' Motion to Dismiss (ECF No. 22) is DENIED. Defendant shall file an answer within fourteen (14) days from the entry of this Memorandum Opinion and Order.

Date: December 4, 2025

/s/
_____
J. Mark Coulson
United States Magistrate Judge