UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Baltimore Division

**C.M.,**

Plaintiff

v.

**ADAMS AND ASSOCIATES, INC.,**

Defendant

**Case No. 1:25-CV-02684-JMC**

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ADAMS AND ASSOCIATES INC.'s MOTION FOR SUMMARY JUDGMENT**

Defendant Adams & Associates, Inc., ("Adams") by and through undersigned counsel, hereby respectfully submits this Memorandum of Law in Support of Defendant Adams and Associates, Inc.'s Motion for Summary Judgment.

## INTRODUCTION

The above-captioned matter arises out of Plaintiff, C.M..'s allegations of alleged negligence, negligent hiring, training, supervision, and retention, and gross negligence against Defendant Adams, who operated the Woodstock Job Corps Center where Plaintiff was a participant from 2003-2004. Plaintiff contends that during his time as a participant and resident at the Woodstock Job Corps Center, the Defendant failed to prevent and protect him from an alleged sexual abuse by one of Defendant's alleged staff members, "Mr. Porter." Plaintiff acknowledged that he **never** reported the alleged sexual abuse to any staff member of the Defendant. Plaintiff's

claims against Defendant Adams at their core are that Defendant Adams lacked sufficient policies, procedures, supervision, and safeguards to prevent Plaintiff's alleged sexual assault.

Plaintiff's claims against Defendant Adams fail as a matter of law. Plaintiff has failed to identify and designate the required standard of care expert to address the standard of care applicable to Defendant Adams as the operator of a Job Corps Center, or the policies applicable to the operation of such a facility, and any breach thereof. The failure to designate such expert is fatal to all of Plaintiff's claims against Defendant Adams, as all claims are premised on the notion that Defendant Adams owed Plaintiff, as a participant in the Job Corps Program, duties and failed to meet the applicable standard of care in operating a Job Corps Center and implementing. policies, procedures, supervision, and safeguards to prevent sexual assault. A layperson is unable to understand the complexities of the requirements of operating a Job Corps Center without sufficient expert testimony. Such issues require expert testimony to define the appropriate standard of care for the finder of fact, and to opine that the Defendant has in fact breached such standard of care. Because Plaintiff did not designate any expert witness on this issue, Plaintiff lacks the necessary evidence to sustain any of his claims against Defendant Adams, and Adams is entitled to summary judgment on all of Plaintiff's claims.

Additionally, Plaintiff has failed to develop and demonstrate for the record sufficient evidence to establish gross negligence on the part of Defendant Adams. The undisputed facts in the instant matter establish that Defendant Adams did not act with intent to cause harm to the Plaintiff nor do the facts establish that Defendant Adams engaged in conduct that is extremely dangerous and outrageous, in reckless disregard for the rights of others. For this reason as well, Defendant Adams is entitled to judgment on Plaintiff's gross negligence claim.

## UNDISPUTED FACTUAL SUMMARY

Defendant Adams is a corporation that at all times relevant to the instant litigation, operated the Woodstock Job Corps Contract Center located in Woodstock, Maryland. Compl. ¶ 9 and 10. Defendant Adams provided residential, career technical, career development, and academic services for the Woodstock Job Corps Contract Center. *Id.* Job Corps is a United States Department of Labor program providing free education and vocational training to individuals ages 16-24. Job Corps was created as part of the Economic Opportunity Act of 1964.[1] "Job Corps is a national program that operates in partnership with States and communities, Local Workforce Development Boards (WDBs), Youth Standing Committees where established, one-stop centers and partners, and other youth programs to provide academic, career and technical education, service-learning, and social opportunities primarily in a residential setting, for low-income young people." 20 C.F.R., § 686.110. "The objective of Job Corps is to support responsible citizenship and provide young people with the skills they need to lead to successful careers that will result in economic self-sufficiency and opportunities for advancement in in-demand industry sectors or occupations or the Armed Forces, or to enrollment in postsecondary education". *Id.* In its operation of the Woodstock Job Corps Center, Defendant Adams utilized the policies and procedures of the Department of Labor, as detailed and achieved on https://prh.jobcorps.gov/, in addition to its own polices and procedures. Exhibit 1, Corporate Designee Deposition, pgs. 39-40 At the timeframe relevant to the allegations of Plaintiff's Complaint, Defendant Adams possessed and utilized employment policies and procedures, a fraternization policy, disciplinary policies, sexual assault and abuse reporting polices, among other extensive policies and procedures. Exhibit 1, Adams Deposition pgs. 39-40, 75-76, 78-79, and 97-98.

[1] The program was reauthorized by the Comprehensive Employment Training Act of 1873, followed by the Job Training Partnership Act of 1982, and the Workforce Investment Act of 1998. *Management & Training Corp. v. United States,* 115 Fed. Cl. 26, n. 1 (2014).

Defendant Adams employed individuals, to operate the Woodstock Job Corps Center. As alleged in Plaintiff's Complaint, Mr. Porter was employed by Defendant Adams[2].

In or around the summer of 2003, at the age of seventeen, Plaintiff, C.M., applied for and was admitted to the Job Corps Program at the Woodstock Center. *See Generally*, Plaintiff's Complaint. and Exhibit 2, Plaintiff's Deposition, pgs. 45-46. Plaintiff resided in a dormitory at the Woodstock Center. *Id.* pgs. 47-48. Plaintiff, through deposition testimony, has summarized that while at the Woodstock Job Corps Center, Mr. Porter, would engage in "horseplay" and wrestling with other residents and with Plaintiff.[3] *Id.*at 57-63, . Plaintiff summarized that the horseplay was common and that it was his recollection that other staff and students witnessed the "horseplay". *Id.*

Plaintiff further testified that on one occasion, he went to the residential advisor's office (the office was not dedicated to Mr. Porter, but was rather used by all of the residential advisors), as the Plaintiff was looking for additional toilet paper. *Id.* at 67. While in the office alone with Mr. Porter, Plaintiff testified that Mr. Porter shut the door, locked it, and prevented Plaintiff from leaving. *Id.* at 67-68. Plaintiff indicated that Mr. Porter then performed oral sex on the Plaintiff. *Id*. Plaintiff confirmed that he did not report this incident to anyone at the Job Corps Center, to any member of Defendant Adams staff, or to any law enforcement authorities. *Id.* at 68 and 116.

**Procedural Summary:**

---

[2] Plaintiff contends Mr. Porter was a Residential Assistant. The Defendant's records/Discovery Responses indicate that Mr. Porter was a Scheduling Coordinator. For the purposes of this Motion, Mr. Porter's exact position title is not material.

[3] It is noted that for the purpose of this Motion, Defendant is acknowledging the Plaintiff's testimony as "undisputed" for the purpose of demonstrating that even if Plaintiff is fully believed, his claims still fail. It is expressly noted through that Plaintiff has presented no support beyond his own testimony for his allegations against Defendant or against Mr. Porter. Essentially the record is devoid of any materials or testimony from other in support Plaintiff's testimony.

On or around May 31, 2025, Plaintiff filed the instant matter in the Circuit Court for Baltimore County, Maryland. Plaintiff's Complaint sets forth three claims against Defendant Adams, Count I – Negligence; Count II – Negligent Hiring, Training, Supervision, and Retention; and Count III – Gross Negligence. Plaintiff's Complaint contends that Plaintiff was sexually abused during his time in the Woodstock Job Corp Program. Plaintiff Complaint contends that the Defendant failed to adequately supervise, monitor, surveil, discipline, or remove, the alleged abuser. Plaintiff further contends that Defendant failed to implement and enforce policies and procedures that were adequate to protect the participants, such as Plaintiff, and further failed to adequately hire and train its employees in order to prevent sexual abuse from occurring. Defendant Adams subsequently removed this matter to this Court based on Diversity Jurisdiction.

On December 22, 2025. the Court approved the Proposed Scheduling Order, and set the following relevant deadlines:

| | |
|---|---|
| Plaintiff's Rule 26(a)(2) disclosures | May 10, 2026 |
| Defendant's Rule 26(a)(2) disclosures | May 31, 2026 |
| Plaintiff's rebuttal Rule 26(a)(2) disclosures | June 14, 2026 |
| Discovery deadline; submission of status report | July 14, 2026 |
| Requests for Admission | July 28, 2026 |
| Dispositive pretrial motions deadline | August 11, 2026 |

Subsequently on April 29, 2026, the parties filed a Joint Motion requesting an extension of the remaining deadlines in the Scheduling Order. On April 30, 2026, the Court granted the extension request and the following deadlines were set:

| | |
|---|---|
| Plaintiff's Expert Designation | June 10, 2026 |
| Defendant's Expert Designation | July 1, 2026 |
| Plaintiff's Rebuttal Expert Designation | July 14, 2026 |
| Completion of Discovery, submission of Post Discovery Joint Status Report | September 14, 2026 |
| Requests for Admission | September 28, 2026 |
| Dispositive Pre-Trial Motions Deadline | October 11, 2026 |

On June 10, 2026, Plaintiff, in accordance with the Scheduling Order, produced his Rule 26(a)(2) Expert Designation. Exhibit 3, Expert Designation. Plaintiff designated one expert, Dr. N.G. Berrill, a psychiatric expert, on the issue of damages. *Id.* No report for Dr. Berrill was produced with the designation. Plaintiff also did not designate any standard of care expert. *Id.*

On July 1, 2026, in accordance with the Scheduling Order, Defendant Adams produced its Expert Designation. Exhibit 4, Defendant Expert Designation. Defendant Adams designated Dr. Neil Blumberg to address Plaintiff's psychiatric claims. Defendant Adams also designated Dr. Jane Hickerson as a standard of care expert to address the policies, procedures, and guidelines of Defendant Adams and their compliance with the standard of care for operating a Job Corps facility. In accordance with FRCP 26(a)(2), Dr. Hickerson's report was produced with her designation.

On July 14, 2026, on Plaintiff's Rebuttal Expert Designation Deadline, Plaintiff produced a "Rebuttal Designation" where he designated Professor Bruce Levenberg as an expert expected to address the standards of care for the Defendant in rebuttal to Defendant's expert, Dr. Hickerson. Exhibit 5, Rebuttal Designation. Produced with Professor Levenberg's designation was a report

that acknowledged that Professor Levenberg had reviewed Dr. Hickerson's report in the preparation of his own. *Id.* Subsequently, on September 14, 2026, Discovery closed.

## STANDARD OF REVIEW

Under Fed. R. Civ. Pro. Rule 56, "The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The rule further states that

> "A party asserting that a fact cannot be or is genuinely disputed must support that ascertain by: (A) citing to particular parts of materials in the record including depositions, documents… or, (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. Pro. 56(c). The burden of proof for establishing that there is no material dispute of fact rests upon the moving party. However, if the nonmoving party fails to make a sufficient showing on an essential element of their case, there is no genuine dispute as to material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)("[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial.").

Under FRCP 56,(a) when there is no genuine dispute as to any material fact, the moving party is entitled to judgment in its favor as a matter of law. *Fordyce v. Prince George's Cnty. MD.*, 43 F. Supp. 3d 537, 544 (D. Md. 2014). A party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. Id at 545.

## ARGUMENT

### 1. Plaintiff Lacks the Necessary Standard of Care Expert Testimony to Support the Claims Against Defendant Adams

Under Maryland law, "where the plaintiff alleges negligence by a professional, expert testimony is generally necessary to establish the requisite standard of care owed by the

professional." *Schultz v. Bank of Am.*, 413 Md. 15, 28 (2010). The law requires that a plaintiff present expert testimony to establish the requisite standard of care, because professional standards are "beyond the ken of the average layman," such that the expert's testimony is necessary to elucidate the relevant standard for the trier of fact. *Schultz v. Bank of Am.*, 413 Md. 15, 20 (2010). This is required because the plaintiff bears the burden of overcoming the presumption that due skill and care were used by the professional. *Id.* (citing *Crockett v. Crothers*, 264 Md. 222, 224 (1972)). If the plaintiff presents no such evidence, insufficient evidence exists to send the matter to the trier of fact, and the defendant is entitled to judgment. *Id.* at 21.

Rule 26(a)(2) governs the disclosure requirements for expert testimony. *See* Fed. R. Civ. P. 26(a)(2). Rule 26(a)(2)(B) provides that each party disclose the identity and report of any witness who is retained to provide expert testimony. The report must contain:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case.

*Id.* "The purpose of Rule 26(a) is to allow litigants 'to adequately prepare their cases for trial and to avoid unfair surprise.'" Bresler v. Wilmington Trust Co., 855 F.3d 178, 190 (4th Cir. 2017). Where "a party fails to provide an expert report as required by Rule 26, the party is not allowed to use that witness to supply evidence at a hearing." *Glob. Digit. Sols., Inc. v. Metalurgica,* No. 21-10716, 2022 U.S. App. LEXIS 30824, at *4-5 (11th Cir. Nov. 7, 2022)(quoting Fed. R. Civ. P. 37(c)(1).)

In the instant matter, Plaintiff asserts claims of Negligence, Negligent Hiring, Training, Supervision, and Retention, and Gross Negligence related to the residential services, supervision, and oversight provided by Defendant Adams in its operation of the Woodstock Job Corps Center, and particularly while Plaintiff was a participant and a resident in the Center's dormitory. As set forth above, it is undisputed that Defendant Adams operated a Job Corps Center, which provided services to residents in accordance with all applicable Federal Regulations. Plaintiff's claims assert that Defendant Adams essentially failed to implement and utilize necessary policies, procedures, and safeguards to prevent sexual assault, and further to protect Plaintiff.

The standard of care applicable to a Job Corps Center operator, such as Defendant Adams, is not something upon which an a lay person would understand. Specifically, the determination of what procedural safeguards are necessary or required in preventing a government residential setting to address sexual abuse or assault, is not an issue that a lay person would understand without the support of expert testimony. The operation of a residential Job Corps Center is professional in nature, and is regulated in that fashion. The policies, procedures, and requirements utilized in the day-to-day operation are complex in nature as such generally must account for and address the potential interactions in both residential and educational settings between staff, management, and participants. The program participants are ages 16-24, so the policies and procedures must further account for interactions in a residential setting between adults and minors. Participants in the program are also deemed Federal Employees, so this governmental component adds an additional layer of complexity to the creation and implementation of policies, procedures, and guidelines. With these complexities in mind, a layperson may not conclude what policies, procedures, guidelines, and practices that Defendant Adams was required to implement in order to adequately address or prevent potential sexual abuse of residents such as Plaintiff. It is clear that expert

testimony is required to in order for Plaintiff to address the applicable standard of care and any breaches thereof.

It is undisputed that Plaintiff filed his expert designation on his Expert Designation Deadline, June 10, 2026, and that such expert designation did not identify any expert to address the standard of care applicable to the operation of a Job Corps Center. Plaintiff bears the burden in this matter to produce evidence to establish that Defendant Adams breached the standard of care applicable to the operation of a Job Corps Center. Evidence defining the applicable standard of care and any breach of such standard of care for a professional and federally regulated Job Corps Center, must come from an expert witness in such field. Plaintiff failed to designate such expert in the instant matter.[4] The absence of such an expert is fatal to Plaintiff's ability to meet his burden of proof and to present any of his claims against Defendant to a jury, as he lacks essential evidence to satisfy his prima facie case. As such, Defendant is entitled to Judgment as to all of Plaintiff's claims.

2. **Plaintiff's Claim for Gross Negligence Fails as a Matter of Law as the Undisputed Facts Do Not Meet the Requisite Standard.**

As further point, Plaintiff has failed to present or disclose through discovery any evidence to support a claim for gross negligence in this matter. Gross negligence is "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the

[4] It is acknowledged that Plaintiff designated Professor Bruce Levenberg as a Rebuttal Expert in the instant matter. This is of no consequence, however, as Mr. Levenberg, as a rebuttal expert cannot satisfy Plaintiff's evidentiary requirements, since he may not offer opinions in plaintiff's case in chief, but rather may only rebut evidence/opinions offered by Defendant Adams in its case. *Hoey v. State*, 311 Md. 473, 489, 536 A.2d 622 (1988) ("the function of a rebuttal witness is to respond to evidence presented during the opposing party's case in chief.")

exertion of any effort to avoid them." *Stracke v. Estate of Butler*, 465 Md. 407, 420 (2019); see also *Barbre v. Pope*, 402 Md. 157, 187 (2007). A person may be grossly negligent only where the person "inflicts injury intentionally or is so utterly indifferent to the rights of others that he acts as if such rights did not exist." *Stracke*, 465 Md. at 421. "Only conduct that is of extraordinary or outrageous character will be sufficient to imply" the necessary state of mind. *Id*. Gross negligence is not simply "big negligence," but rather a heightened standard which functions to prevent cases of ordinary negligence from reaching a jury, forcing defendants "to go through the entire litigation process when there is only evidence of simple negligence." *Id.* at 422. To allow such claims to proceed beyond motion "runs contrary to the heightened threshold of gross negligence" the Maryland Courts have articulated. *Id*. Stated more poetically, gross negligence is the failure to act with caution "which even inattentive and thoughtless men never fail to take of their own property." *Boucher v. Riner*, 68 Md. App. 539, 546 (1986),(citing *Bannon v. B. & O. R.R. Co*., 24 Md. 108, 124 (1866)). Actions or inactions which establish simple negligence are not sufficient to plead or prove gross negligence, "even when taken in the light most favorable to" a plaintiff and where the resulting harm is severe. *Id*. at 422.

The difference between negligence and gross negligence is not the degree of harm suffered, but rather the extent to which the defendant acted in a manner which may be described as reckless, having specifically made an election to make no effort to perform its duties and made no exertion of effort to do so. Where sufficient facts are not established, the question of gross negligence need not be submitted to a jury and may, in fact, be decided by the Court as a matter of law. *Howard v. Crumlin,* 239 Md. App. 515, 525–26 (2018) (affirming dismissal of gross negligence claim for "bald and conclusory" allegations which lacked pleading of sufficient facts to find gross

negligence); see *Stracke*, 465 Md. at 422 (cautioning that defendants must not be forced to litigate gross negligence claims based solely on facts which show negligence).

> "**A party that does not bear the burden of persuasion may move for summary judgment "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.**" *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986**). If, after an adequate opportunity for discovery, "the non-movant does not come forward with evidence that would reasonably permit the finder of fact to find in her favor on a material question, then the court must enter summary judgment against her."** *Waldridge v. American Hoechst Corp*., 24 F.3d 918, 920 (7th Cir. 1994) (emphasis in original) (citations omitted). This is not an onerous burden, yet "[d]espite the rudimentary nature of their task, parties served with summary judgment motions often misconceive what is required of them." Id. at 921."

*Modrowski v. Pigatto*, 712 F.3d 1166, 1167 (7th Cir. 2013)(emphasis added).

Plaintiff's allegations against Defendant in this matter amount to an alleged insufficiency of policies to "prevent" the alleged assault from occurring. Plaintiff has not alleged, let alone produced evidence to support that Defendant engaged in an intentional failure to perform its duties. The record in this matter demonstrates that Defendant had numerous policies and procedures to address sexual assault and abuse, appropriate reporting, employee requirements, and non-fraternization. Plaintiff's claim therefore amounts to an issue of if the policies and procedures in existence were sufficient. Alleged sufficiency issues with the policies, procedures, and supervision performed by the Defendant does not amount to "conduct that is extremely dangerous and outrageous, in reckless disregard for the rights of others. *Wells v. Polland*, 120 Md. App. 699, 719, 708 A.2d 34 (1998) (citing *Doehring v. Wagner*, 80 Md. App. 237, 246, 562 A.2d 762 (1989)). Nor does it amount to conduct that was performed with actual knowledge or with what the law deems the equivalent to actual knowledge. As such, Plaintiff cannot establish that Defendant acted with reckless disregard in order to assert their claim for gross negligence. The alleged actions or omissions of the Defendant, at most, constitute simple negligence, and as such, do not amount to

a finding that Defendant engaged in gross negligence. For these reasons as well, Defendant is entitled to summary Judgment on Plaintiff's Gross Negligence claim.

Respectfully submitted,

*/s/Eric M. Rigatuso*
Eric M. Rigatuso (27605)
ECCLESTON & WOLF, P.C.
Baltimore-Washington Law Center
7240 Parkway Drive, 4th Floor
Hanover, MD 21076-1378
(410) 752-7474 (phone)
(410) 752-0611 (fax)
E-mail: rigatuso@ewmd.com
*Attorney for Defendant*

*/s/Kari J. Gallagher*
Kari J. Gallagher (31354)
ECCLESTON & WOLF, P.C.
Baltimore-Washington Law Center
7240 Parkway Drive, 4th Floor
Hanover, MD 21076-1378
(410) 752-7474
(410) 752-0611 (fax)
E-mail: gallagher@ewmd.com
*Attorney for Defendant*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 9, 2026, copies the foregoing Memorandum of Law was served via the Court's ECF System to:

Aaron Parker, Esquire
HERMAN LAW
1800 n. Military Trail
Suite 140
Boca Raton, FL 33431
Phone: (561) 453-3679
Fax: (305) 931-0877
aparker@hermanlaw.com
*Counsel for Plaintiff*

*/s/Eric M. Rigatuso*
Eric M. Rigatuso (27605)